# EXHIBIT A

**SCHENCK, PRICE, SMITH & KING, LLP**
Gary F. Werner, Esq. (021361983)
Ryder T. Ulon, Esq. (028402006)
Thomas N. Gamarello, Esq. (160842015)
220 Park Avenue
P.O. Box 991
Florham Park, New Jersey 07932
(973) 539-1000
Attorneys for Plaintiff,
Cushman & Wakefield of New Jersey, LLC

|  |  |
|---|---|
| CUSHMAN & WAKEFIELD OF NEW JERSEY, LLC, <br><br> Plaintiff, <br> v. <br><br> WYNDHAM DESTINATIONS, INC. <br><br> Defendant. | SUPERIOR COURT OF NEW JERSEY <br> LAW DIVISION: MORRIS COUNTY <br><br> DOCKET NO. MRS-L-_____ <br><br> Civil Action <br><br> **COMPLAINT, DESIGNATION OF TRIAL COUNSEL, JURY DEMAND AND RULE 4:5-1 CERTIFICATION** |

Plaintiff, Cushman & Wakefield of New Jersey, LLC ("Plaintiff" or "C&W"), by and through its undersigned attorneys, Schenck, Price, Smith, & King, LLP, by way of Complaint against the defendant, Wyndham Destinations, Inc. ("Defendant" or "WDI"), says as follows:

## FACTS COMMON TO ALL COUNTS

1.      Plaintiff, C&W, is a New Jersey limited liability company with an address of 1 Meadowlands Plaza, East Rutherford, New Kersey 07073.

2.      Upon information and belief, Defendant, WDI, is a Florida corporation with an address of 6277 Sea Harbor Drive, Orland, Florida 32821.

3.      Plaintiff is a global leader in the commercial real estate industry with over 100 years of industry expertise.

4.      Defendant is an American timeshare company that operates several hotel brands around the world.

5.      On or about October 1, 2018, Plaintiff and Defendant entered into a certain Listing Agreement for Sublease dated as of October 1, 2018 (the "Agreement"), whereby WDI granted C&W the exclusive right to sublease the premises currently leased by WDI in the real property located at 14 Sylvan Way, Parsippany, New Jersey (the "Premises") or to obtain an assignment, buyout, cancellation or termination of WDI's lease of the Premises.  See a true and accurate copy of the Agreement attached as **Exhibit A**.

6.      In return for C&W's efforts to utilize its substantial industry expertise in the performance of same, WDI promised, inter alia, to refer to C&W all inquiries and offers WDI received with respect to the Premises, "regardless of the source of such inquiries or offers," (id. at Section 4), and to pay C&W commissions equivalent to 5% of the aggregate rental set forth in the sublease (id. at Section 5).

7.      The Term of the Agreement ran from October 2, 2018 through March 31, 2020. Id. at Section 1.  After October 2, 2019, WDI could terminate the Agreement by providing 30-days' written notice.  Id. at Section 1.

8.      During the Term of the Agreement, C&W invested extensive time and expertise on WDI's behalf and at WDI's direction.

9.      The Agreement contained a narrow carveout whereby commissions would not be due to C&W if WDI subleased the Premises to Wyndham Hotel Group LLC ("WHG") according to the express terms included in the form Agreement of Intent to Sublease dated May 31, 2018, which was attached to the Agreement.  Id. at pp. 6-9.

10.     Despite the unambiguous nature of WDI's obligations to refer to C&W all inquiries and offers WDI received with respect to the Premises in Section 4, and the narrow carveout for a sublease to WHG in the form expressly referenced in the Agreement, upon information and belief, WDI subleased the Premises to WHG on or about June 28, 2019 without notice to C&W and in a form that materially altered the terms of the Agreement of Intent to Sublease.

11.     In other words, WDI subleased the Premises, contrary to the express terms of Sections 4 and 5 of the Agreement, at a time when the Agreement was still in full force and effect.

12.     In so doing, WDI purposefully attempted to circumvent its contractual obligation to pay C&W its commissions pursuant to Section 5 of the Agreement.

13.     Indeed, Section 5 of the Agreement unambiguously states that "if during the term of this Agreement [WDI] enters into a Transaction for any portion of the Premises, [WDI] will pay to C&W a commission . . .".

14.     C&W continued to perform its contractual obligations under the Agreement because WDI never notified it of its non-conforming sublease to WHG on or about June 28, 2019 despite its contractual obligation to do so under the Agreement and, as a result, C&W has been damaged.

15.     Pursuant to Section 5 of the Agreement and the Schedule of Commissions, C&W is entitled to 5% of the Total Aggregate Rent of $20,900,683.63 as its commission, which is $1,045,034.18, exclusive of interest, fees and other damages.

16.     Section 8 of the Agreement also entitles the prevailing party in any litigation related to the Agreement to recover its costs and expenses, including reasonable attorneys' fees, pursuant to Section 8 of the Agreement.

17.     On January 21, 2020, C&W contacted WDI in an attempt to resolve the matter amicably, but WDI did not respond.

18.     C&W again tried to resolve the matter amicably with WDI via letter dated March 3, 2020, but WDI still did not respond.

19.     Recent attempts to resolve the matter with WDI amicably have been unsuccessful.

20.     C&W now seeks this Court's intervention in order to recover its commissions, along with statutory interests, damages and costs, including reasonable attorneys' fees.

## FIRST COUNT

### (Breach of Contract)

21.     C&W repeats and re-alleges the allegations contained in the Facts Common to All Counts as if the same were fully set forth at length herein.

22.     At all relevant times, the Agreement was in full force and effect, and C&W was not in default.

23.     C&W performed its services for WDI's benefit pursuant to the contractual relationship between the parties.

24.     WDI's failure to notify C&W about the potential sublease of the Premises breached WDI's obligations under Section 4 of the Agreement.

25.     WDI's sublease of the Premises to WHG in a form materially different from the form expressly referenced in the Agreement breached WDI's obligations under Section 5 of the Agreement.

26.     WDI's continued failure to pay C&W its commissions under Section 5 of the Agreement constitutes an additional breach of the Agreement.

27.     As a result of WDI's actions, C&W has suffered and will continue to suffer injury, including the loss associated with WDI's failure to pay the contractual commissions due to C&W.

**WHEREFORE**, C&W demands that judgment be entered in its favor and against WDI for compensatory damages, together with all pre-judgment interest, attorneys' fees, court costs, costs of collection, and any and all other relief the Court deems appropriate.

## SECOND COUNT

### (Breach of Implied Duty of Good Faith and Fair Dealing)

28.     C&W repeats and re-alleges the allegations contained in the Facts Common to All Counts and the First Count as if the same were fully set forth at length herein.

29.     At all relevant times, the Agreement was in full force and effect, and C&W was not in default.

30.     WDI breached its implied duty of good faith and fair dealing ancillary to the contract between C&W and WDI by surreptitiously subleasing the Premises to WHG, in a form materially different from the form contemplated in the carveout in Section 5 of the Agreement, in such a way as to avoid having to pay C&W its commission under the Agreement.

31.     WDI did this despite accepting and benefiting from C&W's performance under the Agreement.

32.     WDI's continuing failure to pay C&W its commission under the Agreement without any basis or justification in fact or law is an ongoing breach and the result of bad faith.

33.     C&W relied upon WDI's promise to perform pursuant to its contractual obligations as the basis for its performance, but WDI's actions to evade its contractual obligations betrayed C&W's reliance and demonstrated WDI's bad faith.

34.     As a result of WDI's actions, C&W has suffered and will continue to suffer injury, including the loss associated with Defendant's failure to pay the amounts agreed to and due and owing.

**WHEREFORE**, C&W demands that judgment be entered in its favor and against WDI for compensatory damages, together with all pre-judgment interest, attorneys' fees, court costs, costs of collection, and any and all other relief the Court deems appropriate.

## THIRD COUNT

### (Reasonable Value for Services Provided)

35.     C&W repeats and re-alleges the allegations contained in the Facts Common to All Counts, the First Count, and the Second Count as if the same were fully set forth at length herein.

36.     At all relevant times, the Agreement was in full force and effect, and C&W was not in default.

37.     WDI has received the benefit of C&W's performance under the Agreement without being required to pay the reasonable value thereof, including the payment of C&W's commissions which both parties agreed to be a reasonable value for C&W's services.

38.     WDI has refused to pay C&W the reasonable value for the services provided to the detriment of C&W.

39.     In particular, WDI failed to notify C&W of its sublease of the Premises to WHG on or about June 28, 2019, in a form materially different from the form contemplated in Section 5 of

the Agreement, and, as a result of C&W continuing to perform its contractual obligations under the Agreement, C&W has been damaged.

40.     Despite C&W's repeated demands to WDI to satisfy the total outstanding amount, WDI has refused to pay the balance or come to an agreement with C&W on a mutually-agreeable payment plan.

**WHEREFORE**, C&W demands that judgment be entered in its favor and against WDI for compensatory damages, together with all pre-judgment interest, attorneys' fees, court costs, costs of collection, and any and all other relief the Court deems appropriate.

## FOURTH COUNT

### (Unjust Enrichment)

41.     C&W repeats and re-alleges the allegations contained in the Facts Common to All Counts, the First Count, the Second Count, and the Third Count as if the same were fully set forth at length herein.

42.     At all relevant times, the Agreement was in full force and effect, and C&W was not in default.

43.     WDI has received the benefit of C&W's services without being required to pay the reasonable value thereof.

44.     As a result of receiving C&W's services without honoring its obligation to pay the reasonable value thereof, particularly C&W's commission as set forth in the Agreement, WDI has been unjustly enriched.

45.     Despite C&W's repeated demands to WDI to satisfy the total outstanding amount, WDI has refused to pay the balance or come to an agreement with C&W on a mutually-agreeable payment plan.

**WHEREFORE**, C&W demands that judgment be entered in its favor and against WDI for compensatory damages, together with all pre-judgment interest, attorneys' fees, court costs, costs of collection, and any and all other relief the Court deems appropriate.

### FIFTH COUNT

### (Quantum Meruit)

46.     C&W repeats and re-alleges the allegations contained in the Facts Common to All Counts, the First Count, the Second Count, the Third Count, and the Fourth Count as if the same were fully set forth at length herein.

47.     At all relevant times, the Agreement was in full force and effect, and C&W was not in default.

48.     WDI expressly engaged C&W to provide certain commercial real estate services in furtherance of WDI's business and/or its business operations.

49.     C&W agreed to provide and did provide the requested services to WDI in a satisfactory manner.

50.     In particular, WDI failed to notify C&W of its sublease of the Premises to WHG on or about June 28, 2019, in a form materially different from the form contemplated in Section 5 of the Agreement, and, as a result of C&W continuing to perform its contractual obligations under the Agreement, C&W has been damaged.

51.     At all times, WDI enjoyed the benefits of said services provided by C&W.

52.     C&W is entitled to be compensated for the reasonable value of the services it provided to WDI upon WDI's request.

53.     Despite C&W's repeated demands to WDI to satisfy the total outstanding amount, WDI has refused to pay the balance or come to an agreement with C&W on a mutually-agreeable payment plan.

**WHEREFORE**, C&W demands that judgment be entered in its favor and against WDI for compensatory damages, together with all pre-judgment interest, attorneys' fees, court costs, costs of collection, and any and all other relief the Court deems appropriate.

## SIXTH COUNT

### (Promise to Pay)

54.     C&W repeats and re-alleges the allegations contained in the Facts Common to All Counts, the First Count, the Second Count, the Third Count, the Fourth Count, and the Fifth Count as if the same were fully set forth at length herein.

55.     At all relevant times, the Agreement was in full force and effect, and C&W was not in default.

56.     WDI expressly engaged C&W to provide certain commercial real estate services in furtherance of WDI's business and/or its business operations.

57.     C&W promised to provide those services in return for WDI's promise to fulfill its contractual obligations, including its promise to notify C&W of any inquiries into the Premises and to pay C&W its commission for any such sublease.

58.     C&W provided its services in a satisfactory manner.

59.     In particular, WDI failed to notify C&W of its sublease of the Premises to WHG on or about June 28, 2019, in a form materially different from the form contemplated in Section 5 of the Agreement, and, as a result of C&W continuing to perform its contractual obligations under the Agreement, C&W has been damaged.

60.     Despite C&W's repeated demands to WDI to satisfy the total outstanding amount, WDI has refused to pay the balance or come to an agreement with C&W on a mutually-agreeable payment plan.

**WHEREFORE**, C&W demands that judgment be entered in its favor and against WDI for compensatory damages, together with all pre-judgment interest, attorneys' fees, court costs, costs of collection, and any and all other relief the Court deems appropriate.

## DESIGNATION OF TRIAL COUNSEL

C&W hereby designates Gary F. Werner, Esq. and Ryder T. Ulon, Esq. as trial counsel in this action.

**SCHENCK, PRICE, SMITH & KING, LLP**
*Attorneys for Plaintiff*,
Cushman & Wakefield of New Jersey, LLC

By: s/Gary F. Werner, Esq.
        Gary F. Werner, Esq.

Dated:  February 22, 2021

<u>**CERTIFICATION PURSUANT TO RULE 4:5-1**</u>

**GARY F. WERNER, ESQ.**, of full age, hereby certifies:

1.      I am an attorney-at-law in the State of New Jersey and the managing partner of the law firm of Schenck, Price, Smith & King, LLP, attorneys for plaintiff in the within action.

2.      I hereby certify that I have no knowledge of any other pending actions or proceedings concerning the subject matter of this action.

3.      It is not anticipated at this time that there is any other party that should be joined in this action.

4.      I certify that confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

**SCHENCK, PRICE, SMITH & KING, LLP**
*Attorneys for Plaintiff,*
Cushman & Wakefield of New Jersey, LLC


By: <u>s/Gary F. Werner, Esq.</u>
        Gary F. Werner, Esq.

Dated:  Dated:  February 22, 2021

# EXHIBIT A

LISTING AGREEMENT FOR SUBLEASE

LISTING AGREEMENT
FOR SUBLEASE

THIS LISTING AGREEMENT FOR SUBLEASE (this "Agreement") is entered into by and between Wyndham Destinations, Inc. ("Sublandlord"), which hereby appoints Cushman & Wakefield of New Jersey, LLC ("C&W") as its sole agent and grants to C&W the exclusive right to sublease the premises (the "Premises") currently leased by Sublandlord in the real property located at 14 Sylvan Way, Parsippany, New Jersey or to obtain an assignment, buyout, cancellation or termination of Sublandlord's lease of the Premises, as provided below. A sublease, assignment, buyout, cancellation or termination will be referred to as a "Transaction" below.

1.     Term.  The term of this Agreement will commence on October 2nd, 2018 and will expire on March 31, 2020. After October 2nd, 2019, Sub-landlord will have the right to cancel this Agreement at any time by providing 30 day written notice.

2.     Services.  C&W will use its efforts to obtain a satisfactory Transaction for the Premises at a rate to be determined by Sublandlord and on such other terms as are acceptable to Sublandlord. C&W will negotiate the business terms of any Transaction on behalf of Sublandlord and in Sublandlord's best interest, subject to Sublandlord's review and final approval, except as otherwise directed by Sublandlord.  C&W will cooperate with other licensed real estate brokers.

3.     Marketing.  Sublandlord authorizes C&W to advertise and place signage on the Premises, subject to Sublandlord's approval of any advertisements and signage.  C&W, at its own expense, will place its standard sign on the Premises and will prepare and distribute a standard brokerage flyer. All advertising whether prepared or issued by C&W or by Sublandlord will identify C&W as Sublandlord's exclusive agent for the Premises.  C&W acknowledges that it is illegal to refuse to display or sublease to or from any person because of one's membership in a protected class, *e.g.* race, color, religion, national origin, sex, ancestry, age, marital status, physical or mental handicap, familial status or other class protected by applicable law, and agrees to offer the Premises in compliance with all applicable anti-discrimination laws and in compliance with all applicable laws, regulations, codes, ordinances and administrative orders.

4.     Referrals.  During the term of this Agreement, Sublandlord will refer to C&W all inquiries and offers received by Sublandlord with respect to the Premises, regardless of the source of such inquiries or offers.

5.     Commission.  Except as specifically set forth in this Section 5, if during the term of this Agreement Sublandlord enters into a Transaction for any portion of the Premises, Sublandlord will pay to C&W a commission in accordance with the attached Schedule of Commissions, which is incorporated herein by this reference.  Sublandlord shall not be required to pay C&W any commission in the event that Sublandlord enters into a sublease pursuant to terms outlined  in the Agreement of Intent to Sublease dated May 31, 2018 between Wyndham Worldwide Operations, Inc. and Wyndham Hotel Group, LLC ("WHG"), attached as Exhibit "A" to this Agreement ("**WHG Sublease**")  In the event that one or more complete floors are added to the premises of the WHG Sublease in any further amendment or renewal to the WHG Sublease due the direct efforts of C&W ("**Additional Area**"), Sublandlord shall be required to pay C&W a prorata share of the commission, which shall be calculated by taking the square feet of the Additional Area divided by the overall square feet of the premises (the square feet of the original WHG sublease  as well as the Additional Area), multiplied by the total commission rate. Within seven (7) business days after the end of the term or early termination, C&W will provide to

LISTING AGREEMENT FOR SUBLEASE

Sublandlord a list of prospective subtenants and assignees to whom the Premises was submitted by any party during the term.  If a prospective subtenant or assignee, appearing on the list, enters into a sublease or assignment within 120 days after the end of the term, and thereafter the sublease or assignment is fully executed and delivered, Sublandlord will pay a commission to C&W as provided above. Sublandlord agrees that such 120-day period may be extended if negotiations with a prospective subtenant or assignee are continuing.  The 120-day extension period shall also apply to a buyout, cancellation or termination of the lease.

6.     Outside brokers.  If C&W recognizes an outside broker authorized to represent the subtenant or assignee in a transaction for which a commission is payable hereunder, C&W will request such broker to agree to accept the outside broker portion of the commission computed and payable in accordance with the annexed Schedule, and if such other broker agrees, Sublandlord will pay C&W the commission computed and payable in accordance with the annexed Schedule out of which C&W will pay to such other broker its agreed upon commission and retain the balance of the commission as C&W's compensation.  If the other broker does not so agree, then negotiations will be suspended until such agreement is obtained.  The term "outside broker" means a broker other than Ed Duenas and Brian Cass.

7.     Representation of Subtenants.  Sublandlord acknowledges and agrees that C&W may represent potential subtenants and assignees and consents to such dual representation, provided C&W timely discloses any such dual representation to Sublandlord.

8.     Fees and Expenses.  If either party commences litigation against the other party to enforce its rights under this Agreement, the prevailing party will be entitled to recover from the other party the costs and expenses (including reasonable attorneys' fees) incurred. WHERE PERMITTED BY LAW, EACH PARTY KNOWINGLY AGREES TO WAIVE ANY AND ALL RIGHTS TO HAVE A DISPUTE ON ANY MATTER RELATING TO OR ARISING FROM THIS AGREEMENT DETERMINED BY A JURY.

9.     Authority.  Sublandlord represents that it has a valid leasehold interest in the Premises and has the right to sublease or assign the Premises, subject to any approval required from the prime landlord, if any.  The individuals signing below represent that they are authorized to sign this Agreement on behalf of the entity indicated.

10.    Professional Advice.  C&W recommends that Sublandlord obtain legal, tax or other professional advice relating to this Agreement and the proposed sublease of the Premises as well as the condition and/or legality of the Premises, including, but not limited to, the Premises' improvements, equipment, tenancies, title, environmental aspects and compliance with the Americans with Disabilities Act.  C&W will have no obligation to investigate any such matters unless expressly otherwise agreed to in writing by Sublandlord and C&W.  Sublandlord further agrees that in determining the financial soundness of any prospective subtenant, Sublandlord will rely solely upon Sublandlord's own investigation and evaluation, notwithstanding C&W's assistance in gathering any financial information.

11.    OFAC.  Each party represents and warrants to the other that it, and all persons and entities owning (directly or indirectly) an ownership interest in it: (a) are not, and will not knowingly become, a person or entity with whom a party is prohibited from doing business under regulations of the Office of Foreign Asset Control ("OFAC") of the Department of the Treasury (including, but not limited to, those named on OFAC's Specially Designated and Blocked Persons list) or under any statute, executive order or other governmental action; and (b) are not knowingly engaged in, and will not knowingly engage in, any dealings or transactions or be otherwise associated with such persons or entities described in clause (a) above.

12.    Anti-Bribery & Corruption.  Each party represents and warrants to the other that it (and any party acting on its behalf) has not, in order to enter into this Agreement, offered, promised, authorized or made any payments or transfers of anything of value which have the purpose or effect

LISTING AGREEMENT FOR SUBLEASE

of public or commercial bribery, kickbacks or other unlawful or improper means of doing business ("Prohibited Activity") and will not engage in Prohibited Activity during the term of this Agreement.

In the event of any violation of this section, the non-offending party shall be entitled to immediately terminate this Agreement and take such other actions as are permitted or required to be taken under law or in equity.

13.    Miscellaneous.  This Agreement shall be governed by the laws of the State of New Jersey, without giving effect to principles of conflicts of law.  This Agreement constitutes the entire Agreement between the parties regarding the subject matter herein, and no amendments, changes or modifications may be made to this Agreement without the express written consent of each of the parties.  If any term or provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the terms and provisions of the Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.  No failure or delay by a party in exercising any right hereunder or any partial exercise thereof shall operate as a waiver thereof or prohibit any other or further exercise of any right hereunder.  This Agreement shall benefit and be binding upon the parties and their respective successors and assigns.  This Agreement may be executed and delivered (including by facsimile, "pdf" or other electronic transmission) in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

**WYNDHAM DESTINATIONS, INC.**

By: _____

Name: _B. Erik Brandt_

Title: _VP Acquisitions_

Date: _10/1/18_

[Schedule of Commissions Follows]

**CUSHMAN & WAKEFIELD OF NEW JERSEY, LLC**

By: _____

Name: _____

Title: _____
Andrew R. Judd
Managing Principal
New Jersey

Date: _10-1-18_

LISTING AGREEMENT FOR SUBLEASE

## SCHEDULE OF COMMISSIONS FOR SUBLEASE

**Sublease Rates**: Five (5%) percent of the aggregate rental set forth in the sublease.

**Outside Broker:** Notwithstanding the rates posted above, if an outside broker procures the subtenant, Sublandlord shall pay C&W one and one-half (1 ½) times the commission computed and payable above, out of which C&W will pay to such other broker one full commission and retain the balance as C&W's compensation. In no event shall C&W be liable for the failure to obtain any such outside broker's agreement to accept, as its compensation, one full commission computed and payable in accordance with the terms hereof.

**Renewals; Extensions; Expansions:** If at any time: (i) the term of a sublease is renewed or extended pursuant to an option or right contained in the sublease or not; or (ii) a subtenant subleases other or additional space from the sublandlord pursuant to an option or right contained in the sublease or not; then, and in any such event, the sublandlord shall pay to C&W, at the time of the exercise of any such option or right, additional commission(s) based on the aggregate rental for the renewal or extension term(s) or for such other or additional space(s) and computed at the above rate.

**Exclusions**: Notwithstanding anything to the contrary set forth in this Schedule or in the Agreement to which it is attached, Sublandlord shall have no obligation to pay a commission to C&W during the first one-hundred eighty (180) days from the execution date of this Agreement (the "Blackout Period") with respect to any direct transaction between subtenant and sublandlord's landlord or in connection with any Transaction involving Wyndham Hotels & Resorts, Inc. or Wyndham Hotels and Resorts, LLC ("Identified Parties"). If any of the Identified Parties subleases the Premises after the Blackout Period, then (i) C&W shall be entitled to a commission equal to three percent (3%) of the aggregate rental set forth in the sublease, and (ii) C&W will not be responsible to pay an Outside Broker. In the event that any of the Identified Parties subleases the Property, then C&W will not be responsible to pay an Outside Broker.

**Computation of Sublease Commissions:** Commissions shall be computed in accordance with the above rate based upon the aggregate rental set forth in the sublease. No commission shall be payable with respect to rental concessions or any additional rent payable by the subtenant by reason of increases in taxes and/or the costs of maintaining or operating the property at which the sublease is made (i.e. escalations). However, if a rental concession is granted in lieu of construction or alteration work there shall be no deduction from the aggregate rent set forth in the sublease with respect to such concession.

**Computation of Assignment, Buyout, Cancellation or Termination of Lease Commissions**: The commission shall be computed in accordance with the above rates based upon the aggregate rental for the remaining unexpired term of the tenant's lease for the Premises, plus five (5%) percent of any other consideration (including consideration payable to the tenant for the transfer of any fixtures, furniture, equipment or other personal property) payable to the tenant in connection with the assignment, surrender, cancellation or sale of lease transaction.

**Cancellation Clauses:** C&W will be paid a commission based upon the entire sublease term notwithstanding any right of Sublandlord to cancel the sublease. If a subtenant has a right to cancel the sublease after the term has commenced (and for reasons unrelated to casualty, condemnation, default and the like), the commission will initially be based upon the noncancellable portion of the sublease term plus the amount of any cancellation payment payable by subtenant; if such right is not thereafter exercised, Sublandlord will promptly pay C&W the balance of the commission. If a cancellation payment includes the unamortized commission, then C&W will be paid a full commission as if no right of

LISTING AGREEMENT FOR SUBLEASE

cancellation existed.  A lease will be deemed canceled only if subtenant vacates the premises.  If a lease is terminated or amended and subtenant remains under a new or different arrangement, C&W shall be paid the balance of its commission.

**Time of Payment**: Commissions on subleases shall be earned, due and payable in full upon the date of the execution and delivery of the sublease by and between the sublandlord and the subtenant and the receipt by the sublandlord of the consent to the transaction from any party whose consent is required. In the case of an assignment, surrender, cancellation or sale of lease transaction, the commission shall be earned, due and payable in full upon the date of the delivery of the fully executed assignment, surrender, cancellation or sale of lease agreement by and between the parties thereto and the receipt by the parties of the consent to the transaction from any party whose consent is required.

**Definitions:** The terms "sublandlord" and "subtenant" shall be deemed to include any subsidiaries, affiliates, successors, nominees or assigns of same.  Where C&W is acting as the subleasing agent, the term "C&W" shall also include any outside broker.

# AGREEMENT OF INTENT TO SUBLEASE

**THIS AGREEMENT OF INTENT TO SUBLEASE** (this "**Agreement**") is made as of the 31st day of May 2018 (the "**Effective Date**"), by and between **WYNDHAM WORLDWIDE OPERATIONS, INC.** ("**WWO**") and **WYNDHAM HOTEL GROUP, LLC** ("**WHG**").

## W̲I̲T̲N̲E̲S̲S̲E̲T̲H̲:

**WHEREAS**, Griffin (Parsippany 14) Essential Asset REIT II, LLC, a Delaware limited liability company, as successor-in-interest to 14 Sylvan Realty L.L.C., as Lessor, and WWO, as Lessee, are party to that certain Lease dated August 5, 2011, as amended by (a) the Commencement Date Agreement dated March 26, 2013, (b) First Amendment to Lease dated February 28, 2014, (c) Second Amendment to Lease dated August 5, 2011, and (d) Third Amendment to Lease dated as of May 31 2018, (collectively, the "**Lease**") covering the Building and the Land located at 14 Sylvan Way, Parsippany, New Jersey;

**WHEREAS**, WHG desires to sublease the second (2nd) floor of the Building from WWO, and WWO desires to sublease the same to WHG;

**WHEREAS**, the corporation spin transaction of Wyndham Worldwide Corporation whereby WWO and WHG will no longer be Affiliates (as defined in the Lease) will be effective as of May 31, 2018 (the "**Spin Date**");

**WHEREAS**, WWO and WHG each acknowledges that the sublease agreement for the second (2nd) floor (the "**Sublease**") shall not be executed by the Spin Date, but both agree to enter into this Agreement to reflect their respective agreements to negotiate and execute the Sublease, which Sublease shall include certain concepts that are set forth in this Agreement, but may be subject to further negotiation and detail in the Sublease.

**NOW, THEREFORE**, in consideration of the mutual agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, WWO and WHG hereby covenant and agree as follows:

1.    **Defined Term and Recitals.**  For purposes of this Agreement, capitalized terms shall have the meanings ascribed to them in the Lease unless otherwise defined herein.  In addition, the recitals set forth above are hereby incorporated herein as if set forth in full in the body of this Agreement.

2.    **Sublease Execution.**  WWO and WHG shall negotiate in good faith and execute the Sublease, provided the form and substance of the Sublease is consistent with the terms set forth herein and contains terms reasonably acceptable to the parties.

3.    **Certain Terms.**  WWO and WHG agree that the following concepts shall be incorporated into the Sublease:

(a)   Subleased Space:  The second (2ⁿᵈ) floor (in its entirety) of the Building. The rentable square footage of the Subleased Space is sixty-seven thousand three hundred nineteen (67,319) rentable square feet, and the rentable square footage of the Building is two hundred three thousand five hundred six (203,506) rentable square feet.  WHG's right to sublease shall include the non-exclusive right of access to all areas and facilities serving the Building that are typically designated as common areas and common facilities.

(b)   WHG's Proportionate Share:  The ratio using the rentable square footage of the Subleased Space over the rentable square footage of the Building, being thirty-three percent (33%).

(c)   Term:  One (1) year.

(d)   Commencement Date:  January 1, 2019.

(e)   Expiration Date:  December 31, 2019.

(f)   Renewal Options:  Two 3-year renewal options by providing at least six (6) months' notice to WWO, which notice shall state whether WHG is exercising the option or not.

(g)   Rent.  WHG shall pay WHG's Proportionate Share of:  (i) the Fixed Basic Rent then due from WWO under the Lease and (ii) all regularly recurring Additional Rent payments; however, WHG shall be responsible for paying those Additional Rent payments that are contracted for by WHG as a special service for its sole benefit.  The foregoing obligation shall commence as of the Commencement Date and continue through the Expiration Date, as the same may be extended.

(h)   WWO's Early Termination Right:

(i)   From December 31, 2018 through March 31, 2019, WWO has the right to (1) nullify the renewal options held by WHG (or any previously exercised right to renew) by providing WHG at least twelve (12) months' prior written notice of the same and/or (2) terminate the Sublease prior to the then scheduled Expiration Date.  The effective date of the early termination of the Sublease shall be twelve (12) months following receipt of such notice.

(ii)   From and after April 1, 2019, WWO shall have the right to have a similar right of nullification of WHG's renewal options (or exercise thereof) and/or the right to terminate the Sublease prior to the then scheduled Expiration Date by providing WHG with nine (9) months' written notice.  The effective date of the early termination of the Sublease shall be nine (9) months following receipt of such notice.

(i)    <u>Insurance:</u> With respect to the Subleased Space, WHG agrees to carry the insurance required under Section 30(a) of the Lease. The foregoing shall not be construed to limit WWO's obligation to comply with the same with respect to the premises subject to the Lease.

(j)    <u>No Default under the Lease.</u> During the Term, neither WHG nor WWO shall take any action that shall cause a default under the Lease.

(k)    <u>Indemnity:</u> WHG agrees to indemnify, defend, and hold WWO harmless with respect to breaches of the Sublease directly caused by WHG, and WWO agrees to indemnify, defend, and hold WHG harmless with respect to breaches of the Sublease directly caused by WWO.

4.    **Interim Period between Spin Date and Execution of Sublease.** The Transition Services Agreement (the "TSA") shall govern the occupancy of WHG from the Spin Date until the Commencement Date of the Sublease.

5.    **Consent from Lessor.** In the event that any notice and/or consent from Lessor is required with respect to the occupancy of WHG with respect to the TSA and/or the Sublease, WWO agrees to pursue the same with reasonable diligence, and WHG shall cooperate reasonably with such efforts of WWO.

6.    **Successors and Assigns.** This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, successors, and permitted assigns.

7.    **Counterparts and Electronic Signature.** This Agreement may be executed in multiple counterparts, each of which shall constitute one and the same instrument. WWO and WHG each expressly agrees that if the signature of WWO and/or WHG on this Agreement is not an original, but is a digital, mechanical or electronic reproduction (such as, but not limited to, a photocopy, fax, e-mail, PDF, Adobe image, JPEG, telegram, telex or telecopy), then such digital, mechanical or electronic reproduction shall be as enforceable, valid and binding as, and the legal equivalent to, an authentic and traditional ink-on-paper original wet signature penned manually by its signatory.

8.    **Miscellaneous.** This Agreement may not be changed, modified, discharged, or terminated, and no obligation, duty, or liability of any party hereto may be released, discharged, or waived, except in writing signed by WWO and WHG or their respective successors and permitted assigns. The submission of this Agreement for examination does not constitute an offer or option, and this Agreement shall be effective only upon execution hereof by all parties hereto. Time is of the essence of this Agreement. If any clause or provision of this Agreement is illegal, invalid, or unenforceable under present or future laws, the remainder of this Agreement shall not be affected thereby, and in lieu of each clause or provision of this Agreement which is illegal, invalid, or unenforceable, there shall be added as a part of this Agreement a clause or provision as nearly identical to the said clause or provision as may be legal, valid and enforceable. The laws of the State of New Jersey shall govern the validity, performance, and enforcement of this Agreement.

3

**IN WITNESS WHEREOF**, the parties hereby have executed this Agreement as of the date first written above.

WWO:
**WYNDHAM WORLDWIDE OPERATIONS, INC.**

By: _____

Name: Jeffrey Leuenberger

Title:   SVP &Treasurer

WHG:
**WYNDHAM HOTEL GROUP, LLC**

By: _____

Name: David B. Wyshner

Title: Executive Vice President and Chief Financial
        Officer

# Civil Case Information Statement

## Case Details: MORRIS | Civil Part Docket# L-000370-21

**Case Caption:** CUSHMAN & WAKEFIELD OF NJ, LL VS WYNDHAM DESTIN

**Case Initiation Date:** 02/22/2021

**Attorney Name:** THOMAS N GAMARELLO

**Firm Name:** SCHENCK PRICE SMITH & KING, LLP

**Address:** 220 PARK AVENUE

FLORHAM PARK NJ 07932

**Phone:** 9735391000

**Name of Party:** PLAINTIFF : Cushman & Wakefield of NJ, LLC

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** CONTRACT/COMMERCIAL TRANSACTION

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Cushman & Wakefield of NJ, LLC?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO

**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO

**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

02/22/2021

Dated

/s/ THOMAS N GAMARELLO

Signed